**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| UPTON ASSETS, LLC, | § | CASE NO. 26-50916 |
| | § | |
| DEBTOR. | § | CHAPTER 11 |

**EMERGENCY MOTION TO DISMISS CHAPTER 11 CASE AS A BAD FAITH FILING OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE AUTOMATIC STAY**

**Emergency relief has been requested. Relief is requested not later than 1:00 pm CT on April 8, 2026.**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

TO THE HONORABLE JUDGE AUBREY L. THOMAS,
UNITED STATES BANKRUPTCY JUDGE:

Creditors/Plaintiffs Elizabeth Garcia, Individually and as Representative of the Estate of Reinaldo Garcia Pena, Deceased, Maday Garcia, and Maria Del Jesus Garcia (collectively, "Plaintiffs") file this *Emergency Motion to Dismiss Chapter 11 Case as a Bad Faith Filing or, in the Alternative, for Relief from the Automatic Stay* ("Motion"), and respectfully show the Court as follows:

**INTRODUCTION**

1. This Chapter 11 Case is not a reorganization. It is a litigation tactic—and a transparent one. Upton Assets, LLC ("Debtor" or "Upton") filed this bankruptcy petition on April 6, 2026 (the "Petition Date"), after a jury had been selected, empaneled, and sworn in a wrongful death trial pending in the 381st Judicial District Court of Starr County, Texas, *Elizabeth Garcia, et al. v. Upton Assets, LLC, et al.*, Cause No. DC-23-465 (the "State Court Action"). The jury was

1

released to return on Wednesday, April 8, 2026, at 1:00 p.m. for opening statements. Within hours of the jury being released, Upton filed its bankruptcy petition and invoked the automatic stay.

2. The filing has none of the hallmarks of a genuine reorganization: no first-day motions, no first-day declaration, no debtor-in-possession financing, no cash collateral motion, no cash management motion, and no identified restructuring path. Yet, on information and belief, the Debtor continues to operate its Facility (as defined below) to this day.

3. The Debtor's own Petition [Doc. No. 1] reveals assets of approximately $946,000 against liabilities of approximately $21.8 million—liabilities that consist overwhelmingly of Plaintiffs' unliquidated wrongful death claims arising from an explosion that killed Reinaldo Garcia Pena on October 7, 2023. The only trade creditors listed are two vendors owed a combined $27,609. This is precisely what courts have consistently recognized as a bad faith filing: a litigation-driven petition filed at the moment of maximum tactical disruption, with no legitimate reorganizational purpose, designed solely to halt an imminent adverse verdict.

4. Plaintiffs respectfully request that the Court:

   a) Dismiss this case for cause pursuant to 11 U.S.C. § 1112(b) as a bad faith filing;

   b) In the alternative, grant Plaintiffs relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(1) to permit the State Court Action to proceed to verdict and entry of judgment for purposes of claim liquidation only, with all collection and execution against the Debtor and estate property remaining stayed;

   c) Order that any relief granted be effective immediately, notwithstanding the 14-day stay otherwise imposed by Federal Rule of Bankruptcy Procedure 4001(a)(4).

**JURISDICTION AND VENUE**

5. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334, and Local Rule 9013-1.

6. The relief requested by the Motion is a core proceeding. *See* 28 U.S.C. § 157(b).

7. The statutory predicate for the relief sought herein is 11 U.S.C. §§ 1112(b) and 362(d).

8. Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

9. On October 7, 2023, a catastrophic explosion occurred at a liquids handling facility located in Reeves County, Texas (the "Facility").

10. The Facility is owned by Debtor and operated by Axis Transport, LLC—both entities wholly owned and controlled by Thomas O. Hanks, Jr.

11. The explosion killed Reinaldo Garcia Pena and Angel Alaffa, workers who had been hired to perform piping work at the Facility.

12. The State Court Action was originally filed on October 13, 2023 by six survivors of the explosion. *See* **Exhibit A** (Copy of Plaintiffs' Original Petition, Ex Parte Application for [Injunctive Relief]; *see also* **Exhibit B** (Copy of Original Petition of Intervention).

13. On October 23, 2023, Plaintiffs—the surviving widow and daughters of Reinaldo Garcia Pena—intervened in the State Court Action.

14. The State Court Action has been actively litigated for over two and a half years.

15. On April 6, 2026, the State Court Action was called to trial before the Honorable Jose Luis Garza in the 381st Judicial District Court of Starr County, Texas.

16. Plaintiffs announced ready.

17. Upton announced ready.

18. Voir dire commenced.

19. A jury was selected, empaneled, and sworn.

3

20.     Judge Garza released the empaneled jury to return on Wednesday, April 8, 2026, at 1:00 p.m. for opening statements.

21.     After the jury was released, Upton filed its *Suggestion of Bankruptcy and Notice of Automatic Stay* in the State Court Action, and simultaneously filed the voluntary Chapter 11 bankruptcy petition which initiated the above-styled bankruptcy case (the "Case").

**ARGUMENT**

**A.     The Case should be dismissed for cause as a "bad faith" filing.**

22.     Section 1112(b) of the Bankruptcy Code provides: "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under Section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."[1]

23.     Section 1112(b)(4) enumerates sixteen examples of "cause," which is a "non-exhaustive list of circumstances" for which dismissal might be appropriate.[2] The Fifth Circuit instructs courts to look at the totality of the circumstances in evaluating whether there is cause to dismiss a chapter 11 case.[3]

24.     Even though the Bankruptcy Code does not explicitly include a "good faith filing" requirement, a bankruptcy petition may be dismissed for "cause" under Section 1112(b) if the

---

[1] 11 U.S.C. § 1112(b).

[2] *See NMSBPCSLDHB, L.P. v. Integrated Telecom Express, Inc. (In re Integrated Telecom Express, Inc.)*, 384 F.3d 108, 118 (3d Cir. 2004).

[3] *See Irasel Sand*, 569 B.R. at 439 (citing *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072-74 (5th Cir. 1986)); *see also, e.g.*, *In re Anderton*, No. 6:12-CV-548, 2013 WL 5315057, at *2 (E.D. Tex. Sept. 23, 2013) (citing *In re Starmark Clinics, LP*, 388 B.R. 729 (S.D.Tex.2008)) ("The bankruptcy court assesses whether cause exists to dismiss a chapter 11 case based on the totality of the circumstances.") (affirming dismissal of individual Chapter 11 debtor case based on totality of circumstances).

debtor filed its petition in bad faith.[4] In *Little Creek*, the good faith requirement helps to guarantee that the Bankruptcy Code's balancing of interests is not damaged by debtors whose purposes are adverse to the basic purpose of bankruptcy:

> [A good faith standard] furthers the balancing process between the interests of debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy. Requirement of good faith prevents abuse of the bankruptcy process by debtors whose overriding motive is to delay creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with "clean hands."[5]

25.  According to the United States Supreme Court, the following are the two basic purposes of Chapter 11: (i) to preserve going concerns, and (ii) to maximize property available to satisfy creditors.[6] Therefore, if a debtor has no need to rehabilitate or reorganize, its petition cannot serve the rehabilitative purpose for which Chapter 11 was designed.[7] If a bankruptcy petition lacks a valid reorganizational purpose, then the debtor lacks good faith, and a court can dismiss the case for "cause" under Section 1112(b).

---

[4] *See In re Mirant Corp.*, 2005 WL 2148362, at *5 (Bankr. N.D. Tex. 2005) ("Lack of good faith is not one of the enumerated examples in section 1112(b), but many courts have held that lack of good faith is appropriate cause for dismissal under that section."); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir.1986) (noting that dismissals pursuant to § 1112(b) may be predicated upon "findings of lack of good faith"); *In re SGL Carbon Corp.*, 200 F.3d 154, 162 (3d Cir. 1999) ("[W]e conclude a [c]hapter 11 petition is subject to dismissal for `cause' under 11 U.S.C. § 1112(b) unless it is filed in good faith."); *In re Marsch*, 36 F.3d 825, 828 (9th Cir.1994) ("Although section 1112(b) does not explicitly require that cases be filed in 'good faith,' courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal.").

[5] *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir. 1986)).

[6] *Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).

[7] *See In re Winshall Settlor's Trust*, 758 F.2d 1136, 1137 (6th Cir. 1985) (Chapter 11's purpose is to provide a financially distressed business with "breathing space" in which to return to a viable state.); *see also* S. REP. NO. 95- 989, at 9 reprinted in 1978 U.S.C-.C.A.N. 5787, 5795 (noting that Chapter 11 deals with the reorganization of a financially distressed enterprise . . . ).

26.     Filing a Chapter 11 petition merely to obtain tactical litigation advantages is not within those legitimate objectives of the bankruptcy system, and such cases are often dismissed.[8] Bankruptcy Courts have commonly dismissed cases for failing this good-faith standard when such cases have been filed to obtain a tactical litigation advantage against another party—"[i]n analyzing the purpose of a debtor's chapter 11 petition in the context of a motion to dismiss for bad faith filing, the courts regularly consider whether the bankruptcy was intended to obtain tactical advantage in litigation or negotiations. Such use of chapter 11 is inappropriate . . . ."[9]

27.     Chapter 11 is a powerful tool for confronting collective action issues that are difficult or sometimes impossible to resolve under state law. It is not a proper venue for resolving a two-party dispute—"[t]wo-party disputes . . . simply have no place in bankruptcy"[10] and, accordingly, "a debtor's attempt to use the provisions of the Bankruptcy Code to gain an unfair

---

[8] *See Antelope Techs., Inc. v. Lowe (In re Antelope Techs, Inc.)*, 431 F. App'x. 272 (5th Cir. 2011) (affirming dismissal for cause based on finding that "the purpose of the petition was not primarily to reorganize or respond to financial crisis but instead was to gain unfair advantage in the shareholder derivative action"); *SGL Carbon Corp.*, 200 F.3d at 165 (citing In re Marsch, 36 F.3d 825, 828 (9th Cir. 1994); *Furness v. Lilienfield*, 35 B.R. 1006, 1013 (D. Md. 1983) ("The Bankruptcy provisions are intended to benefit those in genuine financial distress. They are not intended to be used as a mechanism to orchestrate pending litigation."); *In re Nat'l Rifle Ass'n of Am.*, 628 B.R. 262, 281 (Bankr. N.D. Tex. 2021) ("Courts have consistently held that a bankruptcy case filed for the purpose of obtaining an unfair litigation advantage is not filed in good faith and should be dismissed."); *LaSalle Business Credit, Inc. v. Toth (In re Toth)*, 269 B.R. 587 (W.D. Pa. 2001) (dismissing a case as a bad faith filing where the debtor was involved in essentially a two-party dispute, and had nothing to reorganize); *BEPCO, L.P. v. 15375 Memorial Corp.,* (In re 15375 Memorial Corp.), 400 B.R. 420 (D. Del. 2009) (dismissing filing for bad faith where it was not intended to maximize value of debtor's estates, debtor faced significant risk of liability on the claims in separate litigation, debtor filed on the brink of liability finding in the separate litigation and was motivated by desire to protect other non-debtor entities and their assets from liability).

[9] *In re Mirant Corp.*, 2005 WL 2148362, at *8; *see also In re Silberkraus*, 253 B.R. 890, 905 (Bankr. C.D. Cal. 2000) ("[I]t constitutes bad faith to file bankruptcy to impede, delay, forum shop, or obtain a tactical advantage regarding litigation ongoing in nonbankruptcy forum . . . ."); *In re Sherwood Enterprises, Inc.*, 112 B.R. 165, 171 (Bankr. S.D. Tex. 1989) (citing *In re HBA East, Inc.*, 87 B.R. 248 (Bankr.E.D.N.Y.1988) ("Use of the bankruptcy process as a litigation tactic is abuse of the reorganization process constituting a lack of good faith in filing which warrants dismissal.").

[10] *In re Anderson Oaks (Phase I) Ltd. P'ship*, 77 B.R. 108, 112 (Bankr. W.D. Tex. 1987) (citing *In re Landmark Capital Company*, 27 B.R. 273, 281 (Bankr.D.Ariz.1983); *Matter of Gilbert Broadcasting Corp.*, 54 B.R. 2, 4 (Bankr.D.N.J.1984); *Matter of Volpe*, 53 B.R. 46, 48 (Bankr.M.D.Fla.1985); T. Jackson, THE LOGIC AND LIMITS OF BANKRUPTCY LAW (Harvard University Press 1986).

advantage in a two party dispute strongly supports a finding of cause for dismissal" under the Fifth Circuit's totality of the circumstances standard.[11]

28.     A debtor's intent to use bankruptcy to obtain an advantage in litigation can be evidenced in many ways. These include, without limitation: (1) the timing of a bankruptcy filing in connection with events of the pending litigation; (2) statements by the debtor and the debtor's representatives regarding the purpose of the bankruptcy filing; (3) the amounts at issue in the litigation compared to the size of the estate and the number and size of other claims against the estate; (4) the significance of any non-monetary relief sought in the dispute; (5) whether the debtor's actions in the bankruptcy case reflect genuine efforts to reorganize (e.g., whether terms of a plan proposed in a chapter 11 case reflect a legitimate reorganization effort or instead an effort to obtain a advantage in litigation or to protect or insulate principals from such litigation); (6) whether there was a legitimate need for the debtor's financial reorganization at the time of filing and, particularly, whether there was legitimate pressure from non-insider creditors necessitating the chapter 11 filing (*e.g.*, an imminent threat of foreclosure or the entry of a judgment against the debtor); and (7) whether the bankruptcy case is effectively a dispute between two parties.[12]

---

[11] *In re Starmark Clinics, L*P, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008); *see also In re Nuvira Hosp., Inc*., 2016 WL 6839310, at *4 (Bankr. S.D. Tex. 2016) ("This court has generally found cause to dismiss cases, on grounds of a lack of good faith, in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute.").

[12] *See, e.g.*, *In re Antelope Techs., Inc.*, 2010 WL 104556, at *3 (Bankr. S.D. Tex. Jan. 7, 2010), aff'd, 2010 WL 2901017 (S.D. Tex. July 21, 2010), aff'd, 431 F. App'x 272 (5th Cir. 2011) (finding, in dismissing the case as filed in bad faith, that (1) the timing of the bankruptcy filing did not correspond with any urgent near-term capital needs or other financial stress, (2) the debtor proposed a plan on the petition date in which one of the debtor's principal's was to obtain a release from pending shareholder litigation and retain control of debtor, and (3) the admission by one of the debtor's representatives that the upcoming trial prompted the bankruptcy filing, and concluding that the primary purpose of the bankruptcy filing was obtaining leverage in the shareholder litigation, not for the Debtor's financial reorganization or to respond to a particular financial crisis.); *In re Starmark Clinics, LP*, 388 B.R. 729, 736 (Bankr. S.D. Tex. 2008) (noting, in dismissing the case for bad faith, that: (1) the amounts in controversy in the state court suit were very large compared to the assets and gross income of the bankruptcy estate, (2) the state court lawsuit addressed questions of control of the debtor entity itself, between an entity apparently controlled by one debtor-affiliated individual, and another individual, and (3) there was no evidence showing a need for financial reorganization at the time of filing; and (4) that there were few creditors in the case if participants in the state court case were excluded); *In re Nuvira Hosp., Inc.*, 2016 WL 6839310, at *4 (Bankr. S.D. Tex. 2016) ("This court has generally found cause to

29. This Court has relied on many of these factors in dismissing prior cases as bad faith filings intended to obtain a litigation advantage. Based on the totality of the circumstances, and particularly the factors identified above, it is abundantly clear that the Debtor filed this Chapter 11 Case in bad faith with the intent to halt the State Court Action and obtain an advantage over the Plaintiffs in, or in connection with, the State Court Action.

30. **Timing.** The timing of the Debtor's bankruptcy filing, which was *immediately* following the empaneling of the jury, strongly suggests that the State Court Action was the true and sole catalyst for the commencement of this Case. In essence, the Debtor did not like the way things were going in the State Court Action. Perhaps Debtor did not like the jury that was select. Ultimately, the Debtor is using the Bankruptcy Code as a litigation tactic to delay and derail the State Court Action, which deprives the Plaintiffs of their due process rights in the adjudication of its damages before the already-empaneled jury.

31. **The Debtor's Actions and Representation.** The Debtor filed a traditional chapter 11 bankruptcy case but has not yet filed any typical first-day motions or related filings. The Debtor continues to operate its Facility, but presumably lacks authority to use cash collateral (if even applicable) and its existing cash management systems, among other potential issues.

32. As noted above, the Debtor's own petition [Doc. No. 1] reveals liabilities of approximately $21.8 million—liabilities that consist overwhelmingly of Plaintiffs' unliquidated wrongful death claims arising from an explosion that killed Reinaldo Garcia Pena on October 7, 2023. The only trade creditors listed are two vendors owed a combined $27,609. In fact, the

---

dismiss cases, on grounds of a lack of good faith, in which it appeared that the debtor was attempting to use the provisions of the Bankruptcy Code to gain an unfair advantage in a two party dispute.").

Debtor's list of creditors identifies only 12 creditors—6 of which are related to the State Court Action.

33.     This is precisely what courts have consistently recognized as a bad faith filing: a litigation-driven petition filed at the moment of maximum tactical disruption, with no legitimate reorganizational purpose, designed solely to halt an imminent adverse verdict.

34.     **Size of the Litigation Relative to the Case.**  The Plaintiffs anticipate that their damages, if awarded by the jury, will be large.  In fact, Plaintiffs intend to ask the jury for millions in damages. Without a doubt, the Plaintiffs are the largest creditors in this Case. Although the Debtor has not yet filed its schedules, the Debtor appears to have no secured creditors.  Restated, Debtor's other creditors have relatively small claims and are presumably only nominally affected by this Case.  Accordingly, the other creditors (i.e., the 6 other listed creditors – of which 3 are taxing authorities and 3 appear to be vendors) would be left in effectively the same position if this Case is dismissed.

35.     **No Legitimate Need for Financial Reorganization.**  There appears to be no other financial distress, at least from what can be gleamed from the Debtor's barebone petition, to justify the filing of this Case.  Based on the total lack of information, the lack of first-day motions, and the fact that Plaintiffs are half of the small creditor pool, there seems to be no legitimate need for financial reorganization; Debtor simply wants to halt and delay the State Court Action, and use this bankruptcy Case as a litigation tactic.

36.     **This is a Two-Party Dispute.**  This Case is effectively a two-party dispute between Debtor and the Plaintiffs.  As noted above, the Debtor has sought vey little relief in this Chapter 11 Case, and the timing alone, lack of first-day relief, and small creditor body shows a strong nexus that this Case was filed simply to gain a litigation advantage over Plaintiffs.

37. Ultimately, there is only one dispute in the Chapter 11 Case. It is between Debtor and the Plaintiffs, and it is properly dealt with by the State Court under state law before the jury rather than in the context of chapter 11.

38. Based on the totality of circumstances, this Court should dismiss this Case for being a bad faith filing.

**B. In the alternative, the Court should grant Plaintiffs relief from the automatic stay.**

39. Section 362(d)(1) of the Bankruptcy Code provides that on request of a party in interest, the Court shall grant relief from the stay for "cause." 11 U.S.C. § 362(d)(1). Cause is not defined under Section 362(d)(1) and "is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. Sept. 13, 1995) (citing *In re Sentry Park, Ltd.*, 87 B.R. 427, 430 (Bankr. W.D. Tex. 1988)).

40. Whether cause exists must be decided on a case-by-case basis. *See In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. May 5, 2014).

41. Courts have used a broad range of factors in finding cause to grant relief including: (i) the interests of judicial economy and the expeditious and economical resolution of litigation; (ii) whether litigation in another forum would prejudice the interests of other creditors; and (iii) the impact of the stay on the parties and the balance of harms. *See In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984) (enumerating twelve factors from case law that may be considered in determining whether to modify the stay to permit litigation against the debtor to proceed in another

forum);[13] *see also Sonnax Indus., Inc. v. TRI Component Prods. Corp. (In re Sonnax Indus., Inc.),* 907 F.2d 1280, 1286 (2d Cir.1990) (listing the twelve *Curtis* factors).[14]

42. Here, the *Curtis* factors indicate that the Court should grant the Plaintiffs relief from the automatic stay to allow Plaintiffs to proceed to verdict and entry of judgment before the already-empaneled jury.

43. *Complete Resolution of Issues (Factor 1).* The State Court Action was initiated back on October 13, 2023. After over two and half years of litigation, and starting the trial on April 6, 2026 (at which Debtor announced that it was "ready" and jury was subsequently selected and empaneled), the State Court Action is ripe for adjudication. The parties are asserting state court claims, and require a jury for their adjudication. Here, the jury has been selected and empaneled; the parties are set to have opening arguments set for tomorrow, April 8, at 1:00 pm CT. This factor weighs heavily on granting stay relief.

44. *No interference with bankruptcy case (Factor 2).* Debtor announced that it was ready at State Court Action, and proceed with the trial. It is difficult to believe that a mere few

---

[13] In determining whether to lift the automatic stay to allow litigation against a debtor to proceed in another forum, bankruptcy courts have considered the following factors: 1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves Debtor as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm. *See In re Curtis,* 40 B.R. 795 (Bankr. D. Utah 1984); *Sonnax Industries, Inc.,* 907 F.2d 1280 (2nd Cir.1990) (listing twelve factors).

[14] *See In re Choice ATM Enters., Inc.*, No. 14-44982-DML, 2015 WL 1014617, at *3–4 (Bankr. N.D. Tex. Mar. 4, 2015) (noting that "[s]ome courts have adopted the seven factors enumerated in *Johnson,* which are also specifically tailored to requests to lift the Automatic Stay to proceed with litigation. *See, e.g., Edmondson v. Am. W. Airlines, Inc. (In re Am. W. Airlines, Inc.),* 148 B.R. 920, 923 (Bankr. D. Ariz.1993) ((applying the *Johnson* factors). Many subsequent cases have relied on a mixture of factors from both cases [*e.g.*, *Curtis* and *Johnson*], using the factors appropriate to the circumstances of the case.") (citations omitted)).

hours later they are no longer ready.  There is no interference with this Case, especially since there is no perceived legitimate reorganization purpose for this Case. As noted below and throughout this Motion, creditors will not be prejudiced.

45.     *No prejudice to other creditors (Factor 7).*  No other creditors should be affected by the continuation of the State Court Action. The other 2 vendor creditors' claims are relatively small, compared to the Plaintiffs' litigation claims against Debtor.  Moreover, and if required by the Court, Plaintiffs are ready to take no action to enforce is final judgment entered against the Debtor without further order of this Court.  No creditors, therefore, will be prejudiced by the lifting of the stay allowing Plaintiffs to proceed in the State Court Action and pursue a judgment against the Debtor. This factor also weighs in favor of granting stay relief.

46.     *The interests of judicial economy and the expeditious and economical resolution of litigation (Factor 10).*  This factor weighs heavily in lifting the stay. The parties have announced that they are ready to proceed in the State Court Action and the jury is already empaneled.  To restart this entire process again would both be time consuming and uneconomical to all parties involved at this late stage of the State Court Action.

47.     *The impact of the stay on the parties and the balance of harm (Factor 12).*  As discussed above, the lifting of the stay should not interfere with this Bankruptcy Case and will not affect any creditors.  If required by this Court, the Plaintiffs will take no action to enforce its final judgment and/or collect against the Debtor without further order of this Court.

48.     The Plaintiffs further requests that this Court waive the 14-day stay of such order under Rule 4001(a)(3), as imposing said stay would be unduly burdensome and prejudicial to the Plaintiffs.

49.    **EMERGENCY RELIEF REQUESTED**.    The Plaintiffs require urgent emergency relief; without emergency relief, Plaintiffs will be irreparably harmed. The empaneled jury recommences tomorrow, April 8th, 2026 at 1:00 pm CT.[15]

**CONCLUSION**

For all of the above the reasons, the Plaintiffs respectfully requests that the Court: (i) grant this Motion and enter an order substantially in the form of the proposed order attached hereto; (ii) dismiss this Case or, in the alternative, grant stay relief so that Plaintiffs may continue with the trial in the State Court and otherwise adjudicate its claims; and (iii) grant it all further relief that is just and proper.

Dated: April 7, 2026          **Respectfully Submitted:**

Kean Miller LLP

By:    */s/ Rachel T. Kubanda*
        Rachel T. Kubanda
        Texas Bar No. 24093258
        Kristina Tipton
        Texas Bar No.  24143465
        711 Louisiana, Suite 1800
        Houston, TX  77002
        Telephone: (713)844-3002
        Fax: (713)844-3030

**Creditors/Plaintiffs Elizabeth Garcia, Individually and as Representative of the Estate of Reinaldo Garcia Pena, Deceased, Maday Garcia, and Maria Del Jesus Garcia**

---

[15] The Plaintiffs' state-court counsel intend to file a motion in the State Court Action to temporarily hold the jury until Monday, April 13 2026, but that request is not guaranteed.

## CERTIFICATE OF SERVICE

I hereby certify that I have on this day electronically filed the foregoing document using the Court's CM/ECF filing system, which sends a notice of this filing and an accompanying link to this filing to all parties who have filed a notice of appearance in this case under the Court's CM/ECF system.

I hereby further certify that I have on this day served the foregoing document via email upon the following:

William B. Kingman
3511 Broadway
San Antonio, TX 78209
(210) 829-1199
Email: bkingman@kingmanlaw.com

Dated: April 7, 2026

/s/ Rachel T. Kubanda .
Rachel T. Kubanda